CT\JAMT
ORIGINAL

G. Lee Finley, Esq.
SBT No. 24014609
THE LAW OFFICES OF G. LEE FINLEY, P.C.
Post Office Box 1307
Coppell, Texas 75019
Telephone: (214) 256-3906
Facsimile: (214) 257-8925

ATTORNEY FOR PLAINTIFFS,
RAE LYNN YANCY, KRYSTAL
JOY BUCHANAN, ALEXUS JONES,
ROSITA STERLING AND JOYCELYN
LLOYD

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT WORTH DIVISION

2007 SEP -4 PM 3:26

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AGAPE CHRISTIAN FELLOWSHIP OF ARLINGTON, | § | CASE NO. 07-40983-DML-11 |
| | § | |
| | § | (BANKRUPTCY COURT NUMBER) |
| DEFENDANT, | § | |

| | | |
|---|---|---|
| RAE LYNN YANCY, ET AL., | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| | § | No. 4:07-CV-291-A |
| VS. | § | (District Court Number) |
| | § | |
| AGAPE CHRISTIAN FELLOWSHIP OF ARLINGTON, | § | |
| | § | (Consolidated with District Court Cause |
| | § | No. 4:07-CV-401) |
| DEFENDANT. | § | |

## PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

### PARTIES

1. Rae Lynn Yancy ("Yancy") is a plaintiff in this action.

2. Krystal Joy Buchanan ("Buchanan") is a plaintiff in this action.

3. Alexus Jones ("Jones") is a plaintiff in this action.

4. Rosita Sterling ("Sterling") is a plaintiff in this action.

5. Joycelyn Lloyd ("Lloyd") is a plaintiff in this action.

6. Agape Christian Fellowship of Arlington ("Agape") is the defendant in this action.

## JURISDICTION

7. This court has jurisdiction by order this court signed on July 9, 2007, granting defendant Agape Christian Fellowship of Arlington's motion for limited withdrawal of reference regarding defendant's objections to claim numbered 15, the claim in bankruptcy of Rae Lynn Yancy.

8. The July 9, 2007, order withdrew claim numbered 15 and the objections thereto from the bankruptcy court and ordered that they be carried on the docket of this court.

9. This court has jurisdiction by order this court signed on August 6, 2007, granting defendant Agape Christian Fellowship of Arlington's motion for limited withdrawal of reference regarding defendant's objections to claims numbered 7, 13, 14, and 28, the claims in bankruptcy of Krystal Joy Buchanan, Joycelyn Lloyd, Rosita Sterling, and Alexus Jones, respectively.

10. The August 6, 2007, order withdrew claims numbered 7, 13, 14, and 28 and the objections thereto from the bankruptcy court and ordered that they be carried on the docket of this court.

## CONDITIONS PRECEDENT

11. All conditions precedent have been performed or have occurred.

## GENERAL FACTS

12. Agape is a large non-denomination church located in the city of Arlington, in Tarrant County, Texas. Its spiritual leaders are Terry L. Hornbuckle, who serves as the Bishop of the Church and its senior spiritual leader, and his wife, Pastor Renee Hornbuckle.

13. Plaintiff Rae Lynn Yancy was raped by Terry Hornbuckle on or about June 4, 2004, and again thereafter.

14. Plaintiff Krystal Joy Buchanan was raped by Terry Hornbuckle on or about July 31, 2003.

15. Plaintiff Alexus Jones was raped by Terry Hornbuckle on or about December 1, 2002 and again thereafter.

16. Plaintiff Rosita Sterling was raped by Terry Hornbuckle on or about July 27, 2003.

17. Plaintiff Joycelyn Lloyd was raped by Terry Hornbuckle on or about July 20, 2004.

18. Terry Hornbuckle was convicted of raping Krystal Buchanan, Rae Lynn Yancy and Alexus Jones by a Tarrant County jury and sentenced to 10 years, 14 years, and 15 years for those crimes.

19. Terry Hornbuckle was indicted for the Rape of Rosita Sterling.

20. Terry Hornbuckle was indicted for the Rape of Joycelyn Lloyd.

21. Lisa Mikals was a Church Elder during the time periods relative to Plaintiff's causes of action.

22. Lisa Mikals was indicted for, and pled guilty to, 2 counts of aggravated perjury for lying to a grand jury about the events related to these causes of action.

23. Lisa Mikals was acting as an agent of Agape when she knowingly and deliberately committed the felony of aggravated perjury, at the direction of Agape, with the intent to cover up or facilitate Hornbuckle's crimes, and Agape's involvement therein.

### RAE LYNN YANCY

24. On or about June 4, 2004, Rae Lynn Yancy (Hereinafter Yancy) was lured to a secluded location, drugged and raped by Terry Hornbuckle.

25. Terry Hornbuckle continued to drug and rape Yancy thereafter and maintained her silence through intimidation and threats.

26. Yancy's claims against Agape are currently pending in the Agape Bankruptcy. Yancy's proof of claim is incorporated herein as if fully set forth.

### KRYSTAL JOY BUCHANAN

27. On or about July 31, 2003, Krystal Joy Buchanan (Hereinafter Buchanan) was lured to an apartment by Terry Hornbuckle, based on the representation that Hornbuckle wanted to minister to her, and provide her with a "faith gift" of "Seed Money" which Hornbuckle promised Buchanan that God would bless and make multiply.

28. After luring Buchanan away from the security of her friends and family, Hornbuckle drugged her into submission by administering a drug. Unknown to Buchanan, Hornbuckle placed a drug into a drink and gave it to Buchanan.

29. Once incapacitated, Hornbuckle repeatedly raped Buchanan. At one point, Buchanan regained partial consciousness and attempted to physically resist Hornbuckle. Hornbuckle physically overpowered her, and continued to rape her.

30. Buchanan's claims against Agape are currently pending in the Agape Bankruptcy. Buchanan's proof of claim is incorporated herein as if fully set forth.

## ALEXUS JONES

31. On or about November 1, 2002, Alexus Jones (Hereinafter Jones) received a phone call from Terry Hornbuckle asking to minister to her about relationship issues.

32. Sarah Conner, a church elder, gave Terry Hornbuckle the phone number of Alexus Jones and asked him to counsel Jones.

33. In a counseling section Terry Hornbuckle lured Jones into being alone with him in a secluded location and used drugs to help relax her during their counseling session.

34. Once incapacitated, Hornbuckle raped Jones during the counseling session.

35. In the alternative, Terry Hornbuckle intentionally drugged Jones into unconsciousness and raped her.

36. Hornbuckle continued the counseling with Jones and thereafter drugged and raped Jones while maintaining her silence through intimidation and threats.

37. The claims of Jones against Agape are currently pending in the Agape Bankruptcy. The proof of claim of Jones is incorporated herein as if fully set forth.

## ROSITA STERLING

38. On or about July 27, 2003, Rosita Sterling was lured by Terry Hornbuckle to a parking lot of the Quality Inn at 3891 South Great Southwest Parkway in Grand Prairie, in Tarrant County, based on the representation that Hornbuckle wanted to minister to her, and provide her with a "Faith Gift" of "Seed Money" which Hornbuckle promised Sterling that God would bless and make multiply.

39. When Rosita Sterling arrived, Terry Hornbuckle asked her to get in his truck. Rosita Sterling got into Hornbuckle's truck and Hornbuckle physically assaulted her and raped her.

40. Rosita Sterling's claims against Hornbuckle are currently pending in the Agape bankruptcy. Rosita Sterling's claim is incorporated herein by reference.

### JOYCELYN LLOYD

41. On or about July 20, 2004, Joycelyn Lloyd (Hereinafter Lloyd) was lured to an apartment by Terry Hornbuckle, based on the representation that Hornbuckle wanted to minister to her.

42. After luring Lloyd away from her friend, Hornbuckle drugged her into submission by administering a drug with alcohol.

43. Once incapacitated, Hornbuckle raped Lloyd.

44. Several days later, Hornbuckle came to a home where the 17 year old Lloyd was babysitting.

45. Hornbuckle removed Lloyd's clothing and sexually assaulted her.

46. Lloyd's claims against Agape are currently pending in the Agape Bankruptcy. Lloyd's proof of claim is incorporated herein as fully set forth.

### AGENCY

47. At and during the time of the acts complained of herein, Terry Hornbuckle, Dan Andrew Mikals, Lisa J. Mikals, Eben S. Conner, Sarah Melinda Conner, James Cleporter Sharpe, IV, Monita Vining Sharpe, Celquetti DN Easter (Quett), Shundria and Karen Lewis, were agents, representatives, and/or employees of Agape. Terry Hornbuckle, Dan Andrew Mikals, Lisa J. Mikals, Eben S. Conner, Sarah Melinda Conner, James Cleporter Sharpe, IV, Monita Vining Sharpe, Celquetti DN Easter (Quett), Shundria and Karen Lewis (hereinafter the "Church Leaders") were acting within the course and scope of their actual

or apparent authority or employment when the acts complained of herein occurred, or Agape ratified there actions thereafter.

48. At and during the time of the acts complained of herein, the Church Leaders were compensated agents, representatives, and/or employees of Defendant Church.

49. Agape is liable to the plaintiffs for the acts and/or omissions of the Church Leaders as their agent, representative or employee complained of herein by virtue of such agency relationship. The Church Leaders undertook overt acts and/or omissions to hide, conceal or facilitate Terry Hornbuckle's actions and to induce plaintiffs to cover up, or participate in, illegal acts.

### RESPONDEAT SUPERIOR

50. At and during the time of the acts and/or omissions complained of herein, said acts and/or omissions of the Church Leaders, occurred within their scope of employment with Agape.

51. Agape is therefore liable to the plaintiffs for the acts and/or omissions of any such employee complained of herein under the doctrine of respondeat superior. The Church Leaders took overt acts and omissions to hide, conceal or facilitate Terry Hornbuckle's actions and to induce the plaintiffs to cover up, or participate in, illegal acts.

### NEGLIGENT HIRING

52. Plaintiffs re-allege the facts described above as though fully set forth herein

53. The Defendant owed the plaintiffs a legal duty to hire, supervise, train, or retrain competent employees; Hornbuckle had an extensive history of drug use, prostitution, and sexual assault, which was well known in the upper echelons of the Defendant. Two of the Church Elders were having sexual relations with him; a third was purchasing drugs with church money.

54. The Defendant breached that duty, in that, inter alia, the Defendant permitted Hornbuckle to minister to young girls and women after the Defendant had received multiple warnings about Hornbuckle's proclivities. Even after the entire board had actual knowledge of Hornbuckle's conduct, they continued to let him minister to the most vulnerable... and he preyed on them. But for Defendant's actions, or lack thereof, in failing to restrict Hornbuckle's unsupervised access to young girls and women in the church, the Defendant's failure to address Hornbuckle serious drug problem, and most alarming of all, the Defendant's overt actions to cover up Hornbuckle's multiple sexual assaults, Plaintiff, and many other like her, would not have suffered needlessly at Hornbuckle's, and the Defendant's, hand.

55. Plaintiffs have been injured by Hornbuckle's sexual assault, and by the Defendant's failure to stop it.

### NEGLIGENT SUPERVISION

56. Plaintiffs re-allege the facts described above as though fully set forth herein

57. The Defendant owed the plaintiffs a legal duty to hire, supervise, train, or retrain competent employees; Hornbuckle had an extensive history of drug use, prostitution, and sexual assault, which was well known in the upper echelons of the Defendant.

58. Defendant did not provide sufficient supervision needed in order to reduce or minimize the known risk that Hornbuckle would attempt to rape female parishioners, or embezzle money to purchase drugs.

59. Not only did the Board of Elders not take steps to properly supervise Hornbuckle, or minimize the risk he posed to church members, they actively helped him rape more victims. Elders used Church money to purchase illegal drugs with no recreation purposes

other than date-rape. Elders used Church funds to acquire apartments where Hornbuckle could take his victims. And when Hornbuckle was done, it was the Elders who stepped in, to do what damage control was possible, and ensure that the latest victim would not go to the police.

## NEGLIGENCE

60. Plaintiffs re-allege the facts described above as though fully set forth herein.

61. The defendant had a duty to exercise reasonable care in permitting a known risk, Hornbuckle, to be unleashed upon unsuspecting people, like plaintiffs.

62. The Defendant breached that duty, in that they permitted, and facilitated, Hornbuckle's access to future victims after the defendant had actual or constructive knowledge of the risks associated with Hornbuckle.

63. As a result of Defendant's negligence, plaintiffs were grievously injured when Defendant's agent drugged them and raped them.

## ASSAULT

64. Plaintiffs re-allege the facts described above as though fully set forth herein.

65. In the alternative, Plaintiffs would show Defendant's actions complained of above constitute assault.

## DEFAMATION AND DEFAMATION PER SE

66. Plaintiffs re-allege the facts described above as though fully set forth herein.

67. Defendant published one or more statements that expressly or impliedly asserted a fact. Terry Hornbuckle and members of the Church's Board of Elders stated plaintiffs made false statements and misrepresentations to police and the grand jury. Hornbuckle and the

Church's Board of Elders accused plaintiffs of perjury, extortion, blackmail, sexual misconduct and deviant behavior.

68. Defendant defamed plaintiffs by Slander.

69. Defendant defamed plaintiffs by Libel.

70. Defendants' statements referred to plaintiffs.

71. Defendants' statements were defamatory.

72. Defendants' statements were false.

73. Defendants, with regard to the truth of their statements, acted with malice, negligence or are strictly liable.

74. Defendants' statements are Defamation Per Se, in that the Statements fall within the statutory definition of Libel Per Se.

75. Defendants' statements are Defamation Per Se, in that the statements injured plaintiffs in their office, profession, or occupation.

76. Defendants' statements are Defamation Per Se, in that the statements imputed the commission of a crime by plaintiffs.

77. In the alternative, Defendants defamed plaintiffs by innuendo or implication.

78. As a result of Defendants Defamation, plaintiffs suffered injury to their reputation, personal humiliation, and mental anguish and suffering.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79. Plaintiffs re-allege the facts described above as though fully set forth herein.

80. In the alternative, Plaintiffs would show that Defendant's actions complained of above constitute intentional infliction of emotional distress.

81. The statements by Terry Hornbuckle and Defendant were extreme, outrageous and would be offensive to a reasonable person.

82. Hornbuckle and the Elders and Defendant knew that there was a high probability that the statements would cause severe emotional distress to Plaintiffs.

83. The statements proximately caused severe emotional distress to Plaintiffs and further caused them severe humiliation, embarrassment and mental anguish.

### FALSE IMPRISONMENT

84. Plaintiffs re-allege the facts described above as though fully set forth herein.

85. In the alternative, Terry Hornbuckle intended to confine plaintiffs against their will through the use of drugs and the abuse of his position as their religious advisor.

86. Terry Hornbuckle tricked plaintiffs through representations of counseling sessions resulting in confinement of plaintiffs at secluded locations against their will.

87. The use of drugs by Terry Hornbuckle did not allow for any reasonable means of escape by plaintiffs prior to each incident of rape.

### DAMAGES

88. As a direct and proximate result of defendant's conduct, plaintiffs suffered the following injuries and damages:

    i. Medical expenses in the past,

    ii. Mental anguish in the past and future,

    iii. Lost earnings,

    iv. Damage to earning capacity, and

v.       Plaintiffs seek exemplary damages caused by defendants' willful, intentional and malicious acts under TEX. CIV. PRAC. & REM. CODE Section 41.003.

### PRAYER

89. For these reasons, plaintiffs ask for judgment against defendant for the following:

    i.      Actual damages,

    ii.     General damages,

    iii.    Prejudgment and post judgment interest,

    iv.    Exemplary damages,

    v.     Attorney's fees

    vi.    Costs of suit, and

    vii.   All other relief the court deems appropriate.

Respectfully submitted,

THE LAW OFFICES OF G. LEE FINLEY, P.C.

By: *[signature]*
G. Lee Finley
SBT No. 24014609
Post Office Box 1307
Coppell, Texas 75019
(214) 256-3906
(214) 594-8214 (facsimile)

ATTORNEY FOR PLAINTIFFS,
RAE LYNN YANCY, KRYSTAL
JOY BUCHANAN, ALEXUS JONES,
ROSITA STERLING AND JOYCELYN
LLOYD

CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing has been served on September 4, 2007, mailed by facsimile and regular U.S. mail, to the parties listed below:

Joseph J. Wielebinski, Esq.
Davor Rukavina, Esq.
MUNSCH, HARDT, KOPF & HARR
500 N. Akard Street
Suite 3800
Dallas, Texas 75201-6659
*(Via facsimile 214-855-7584
and First Class U.S. Mail)*

_____
G. Lee Finley